UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **305S TRUST, LLC,** individually and on behalf of those similarly situated, <br><br> **Plaintiff,** <br><br> vs. <br><br> **CARRINGTON MORTGAGE SERVICES, LLC**, <br><br> **Defendant.** | § § § § § § § § § § § § § § <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff 305S TRUST, LLC ("305S Trust") by and through its counsel, Scott Hirsch Law Group, PLLC, and Rodriguez Law & Advocacy, P.A., brings this class action lawsuit for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), Section 559.72(9), Florida Statutes ("Florida Consumer Collection Practices Act" or "FCCPA"), and Section 701.04(1)(a), Florida Statutes.  In support Plaintiff alleges the following:

## NATURE OF THE ACTION

1. This is a putative class action brought through Fed. R. Civ. P. 23.  It is brought by a Florida limited liability corporation on its own behalf and on behalf of all others similarly situated, against one of the country's largest loan servicers, CARRINGTON MORTGAGE SERVICES, LLC ("Defendant" or "CARRINGTON").  CARRINGTON is employed by lenders to "service" mortgages on their behalf.

2. This class action seeks to recover from CARRINGTON improper fees which are excessive in nature and improperly charged by CARRINGTION as being owed by the mortgagor.  These fees, are in many instances, fraudulent in nature and are added onto the fees the owner owes

1

on the distressed property; as a means of providing fees to CARRINGTON and the lenders they service. Plaintiff and the Class Members are Florida homeowners whose homes have been in foreclosure. CARRINGTON is servicer of the mortgage loans which encumber Plaintiff's and Class Members' homes. As a servicer, CARRINGTON regularly acts as a debt collector.

## **PARTIES JURISDICTION AND VENUE**

1. Plaintiff, 305S Trust is a Florida limited liability corporation with its principle place of business located at 7491 North Federal Highway, Boca Raton, Florida, within this judicial district. On May 2, 2013, it purchased a condominium located 350 South Miami Avenue, Unit 2806, Miami Florida, via deed in lieu of foreclosure.

2. Defendant, CARRINGTON is a Delaware limited liability corporation with its principal place of business in Anaheim, California.

3. This Court has general diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the Plaintiffs and Defendants. This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute. The Court also has supplemental jurisdiction over the FCCPA and Section 701.04(1)(a), Florida Statutes claims under 28 U.S.C. § 1367,

because these claims are so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the United States District Court in and for the Southern District of Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

**APPLICABLE LAW**

**FDCPA**

6. The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

7. The FDCPA generally prohibits debt collectors, including CARRINGTON, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" [§ 1692e], and the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f, including, but not limited to:

   a. False representations or misrepresentations of "the character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A);

   b. False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt." *Id.* at § 1692e(2)(B);

   c. "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f (1); and

   d. "The use of any false representation or deceptive means to collect or attempt to

3

collect" a debt. *Id.* at § 1692e (10).

### FCCPA

8. The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

9. Like the FDCPA, the FCCPA prohibits persons, including CARRINGTON, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

10. Specifically, the FCCPA states that no person, including CARRINGTON, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat.

### FACTUAL ALLEGATIONS

11. On May 2, 2013, 305S Trust purchased, at a condominium association foreclosure sale, a condominium located at 350 South Miami Avenue, Unit 2806, Miami, Florida 33130. The condominium association had foreclosed on the property because the previous owner failed to pay condominium association fees. Florida Statute § 718.116, permits condominium associations to foreclose under those circumstance to enable them to recover their unpaid fees.

12. By purchasing the home at the condominium association's foreclosure action, 305S Trust acquired title to the property subject to the previous owner's mortgage. This mortgage was also the subject of a foreclosure action. CARRINGTON was the servicer of this first mortgage.

13. On March 29, 2019, 305S Trust, through its owners, contacted CARRINGTON to determine what amounts were left unpaid on the mortgage so that 305S Trust could purchase the property outright, with a clear title.

14. This process – the determination of amounts unpaid on the mortgage so that the property can be purchased with clear title – is conducted through the transmittal of an "estoppel letter" and is recognized under Fla. Stat. § 701.04.

15. Pursuant to Fla. Stat. § 701.04(1)(a), it is a violation of the statute, for the lender or its agents to deliberately inflate amounts properly due under or secured by a mortgage. *Laptopplaza, Inc. v. Wells Fargo Bank, NA*, 276 So. 3d 375, 376 (Fla. 3d DCA 2019).

16. The "Payoff Statement" and list of fees due sent to Plaintiff pursuant to Fla. Stat. § 701.04, did not contain an accurate payoff balance. Indeed, there existed fees that were overstated, excessive, and non-existent. Specifically, and by way of example, the list of fees contained a line item for a "PROP PRES-POOL SERVICE" in the amount of $1,200.00. This fee is completely fraudulent as the property being a condominium does not have a separate pool for which the maintenance is the responsibility of the property owner. The condominium community pool service is paid for by the condominium association and not authorized by any debt instrument CARRINGTON can charge to Plaintiff. This $1,200 fee, and others similar, is nothing more pure profit for CARRINGTON in violation of the FDCPA, FCCPA, and Fla. Stat. § 701.04. A copy of the Payoff Statement and list of fees owed is attached hereto as Exhibit "A."

17. Additionally, the Payoff Statement contained a line item of "Other Unpaid Expenses" which totaled $21,674.36. CARRINTON did not state how these "other" expenses were calculated, whether they may be disputed, or what provision of the mortgage instrument gave

5

rise to them. Indeed, the "total fees due" which makeup the list of fees totals $17,926.86 (a $3,747.50 difference).

18.     Moreover, nowhere contained within the March 29, 2019 letter to Plaintiff are the required statements that the letter is an attempt to collect a debt, from a debt collector, or that Plaintiff could dispute the amount of the debt. The FDCPA requires these "validation notices" to be sent to consumers, such as Plaintiff and the Class Members, containing certain information about their alleged debt and their rights with respect to those debts. *See* 15 U.S.C. § 1692g(a).

19.     Pursuant to § 1692g(a) of the FDCPA, a debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id*., § 1692g(a). The validation notice must advise the consumer of "the amount of the debt." 15 U.S.C. § 1692g(a)(1). And the validation notice must advise the consumer of their rights to dispute the debt in writing, and to request, in writing, that the debt collector "obtain verification of the debt or a copy of a judgment against the consumer" and mail "a copy of such verification or judgment" to the consumer. *Id*., § 1692g(a)(4).

20.     CARRINGTON failed to comply with § 1692g(a)(1) by not specifying in a clear, intelligible manner the amount of the debt allegedly owed, and CARRINGTON failed to comply with §§ 1692g(a)(4)-(5) by neither providing the consumer (Plaintiff) with a statement that if it notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and mail a copy of such verification or judgment to the consumer, nor providing the consumer a statement that upon Plaintiff's written request within the thirty-day

period, the debt collector will provide Plaintiff with the name and address of the original creditor, if different from the current creditor.

21. Plaintiff attempted numerous times to intervein in the underlying mortgage foreclosure action to dispute the debt and amounts owed. Plaintiff's intervention was opposed by the mortgagee and denied in July of 2019. Ultimately, Plaintiff lost title and possession of the property.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action individually and on behalf of all individuals similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

All persons with a Florida address, to whom CARRINGTON mailed a debt collection communication not returned as undeliverable to CARRINGTON, in connection with the collection of a consumer debt, within the applicable statues of limitations, that failed to state (1) the communication was "an attempt to collect a debt;" or (2) "[i]f the debtor notifies CARRINGTON within 30 days after receipt of this letter that the debt, or any portion of the debt, is disputed, CARRINGTON will obtain verification of the judgment will be mailed to the debtor by the firm;" or (3) "[u]pon the debtor's request within 30 days after receipt of this letter, CARRIGTON will provide the debtor with the name and address of the original creditor if different from the current creditor;" and/or (4) collected or attempted to collect, using Payoff Statements that contained (a) overstated fees; or (b) fees that were not allowed under the law or mortgage agreement; (c) or fees that were fraudulent in nature, such as a pool service fee.

23. Plaintiff and Class Members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence. Excluded from the Class are persons whose

Payoff Statements according to CARRINGTON records were returned as undeliverable, persons whose mortgages were for commercial purposes, not for personal, family, or household purposes, and Defendant, and any subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

24. Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at least 40 persons, the joinder of whom are impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be determined through discovery and review of CARRINGTON's business records.

25. The proposed class is ascertainable because it is defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by CARRINGTON.

26. In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including 305S Trust's) are unified in that they arise from the same improper charging and collection practices arising out of materially identical circumstances. 305S Trust's interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

27. Consistent with Fed. R. Civ. P. 23(a)(3), 305S Trust is a member of the class. Its claims are typical of all other Class Members. All Class Members' claims are unified, as all were victims of the same collection and charging practices.

28. Consistent with Fed. R. Civ. P. 23(a)(4), 305S Trust will adequately represent the class because it has interests in common with the proposed Class Members and it has retained attorneys who are experienced in class action litigation.

29. Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by 305S Trust.

Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

    a. Whether CARRINGTON's impositions of "pool service" and "Other" fees that are not traceable back to actual allowed services provided violate the FDCPA;

    b. Whether CARRINGTON's impositions of "pool service" and "Other" fees that are not traceable back to actual allowed services provided violate the FCCPA;

    c. Whether CARRINGTON's impositions of "pool service" and "Other" fees that are not traceable back to actual allowed services provided violate Fla. Stat. § 701.04.

    d. Whether Plaintiff and Class Members are entitled to statutory damages under the FDCPA and the amounts thereof;

    e. Whether Plaintiff and Class Members are entitled to statutory damages under the FCCPA and the amounts thereof; and

    f. Whether Plaintiff and Class Members are entitled to statutory damages under Fla. Stat. § 701.04 and the amounts thereof.

30. Further, the prosecution of separate actions by individual members of the class would create a risk of:

    a. Inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for the defendant opposing the class; and

    b. Adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to such

adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

31. The class action method is appropriate for the fair and efficient prosecution of this action.

32. Individual litigation of all claims that might be asserted by all class members would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of the defendant.

33. The certification of the class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## COUNT I

### (Fair Debt Collection Practices Act 15 USC §§ 1692e, 1692f)

34. Plaintiff repeats and realleges paragraphs 1 through 33 as if fully stated herein.

35. Plaintiff and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3).

36. The mortgage loans encumbering the property of Plaintiff and Class Members, which CARRINGTON service, are debts under the FDCPA because each is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5)

37. CARRINGTON is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiff and Class Members via

Payoff Statements. The Payoff Statements and servicing letter described above indeed uniformly confirmed this by identifying CARRINGTON as a debt collector. And CARRINGTON acquired the servicing rights of Plaintiff and each Class Member's mortgage after it was in default.

38. CARRINGTON engaged in direct "communications" with Plaintiff and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for reinstatement or payoff of their mortgage loans.

39. The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

40. Congress created shared, substantive statutory rights of Plaintiff and the Class Members to be privately enforced and protected under the FDCPA, which CARRINGTON has violated. *See* 15 U.S.C. §§ 1692, 1692e, 1692f.

41. 15 U.S.C. §1692e states, in relevant part,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ……
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> ………
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

42. 15 U.S.C. § 1692f states, in relevant part,

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is

11

        expressly authorized by the agreement creating the debt or permitted by law.

43. Based on the foregoing allegations, CARRINGTON used deceptive means of collecting debts—the "Pool Service" and "Other Unpaid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them—in violation of 15 U.S.C. § 1692e(10), because it represented them in Payoff Statements in a confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

44. Based on the foregoing allegations, CARRINGTON violated 15 U.S.C. § 1692e(2)(A) because through its Payoff Statements imposing "Pool Service" and "Other Unpaid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them, it falsely or in a misleading manner stated, or mispresented, the amount, character, or status of the amounts needed to payoff Plaintiff's and Class Members' mortgage debts.

45. Based on the foregoing allegations, CARRINGTON violated 15 U.S.C. § 1692e(2)(B) when through its Payoff Statements imposing "Pool Service" and "Other Unpaid Expenses" fees and the "Total Amount to Pay Loan in Full" fees, it falsely or in a misleading manner stated, or mispresented, the compensation that it might lawfully receive from Plaintiff and Class Members.

46. Based on the foregoing allegations, CARRINGTON used unfair means of collecting amounts for "Pool Service" and "Other Unpaid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them in violation of 15 U.S.C. § 1692f, because the amounts were not expressly authorized by Plaintiff's and Class Members' mortgage instruments creating their debts as they must be under those instruments, or they were not permitted by law.

47. These violations of FDCPA caused injury to Plaintiff and Class Members by violating the foregoing substantive FDCPA rights.

48. As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under 15 U.S.C. § 1692(k).

## COUNT II

### (Fair Debt Collection Practices Act 15 USC § 1692g(a)(4))

49. Plaintiff repeats and realleges paragraphs 1 through 33 as if fully stated herein.

50. The FDCPA at 15 U.S.C. § 1692g(a)(4) provides:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

*****

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

51. CARRINGTON's March 29, 2019 communication did not contain the proper disclosures required by 15 U.S.C. § 1692g(a)(4), nor did CARRINGTON provide such disclosures within five days thereafter.

52. Specifically, the March 29, 2019 communication violated 15 U.S.C. § 1692g(a)(4) by failing to inform Plaintiff that CARRINGTON need only mail verification of the Debt to Plaintiff, or a copy of any judgment, if Plaintiff notified CARRINGTON that Plaintiff disputed the Debt, or any portion thereof, in writing.

53. As a result, CARRINGTON violated 15 U.S.C. § 1692g(a)(4).

54.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter failed to give Plaintiff statutorily-mandated disclosures to which Plaintiff was entitled.

55.     CARRINGTON's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016); *Macy v. GC Servs. L.P.*, 897 F.3d 747, 761 (6th Cir. 2018) ("In sum, Plaintiffs have satisfied the concreteness prong of the injury-in-fact requirement of Article III standing by alleging that GC's purported FDCPA violations created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.").

## COUNT III

### (Fair Debt Collection Practices Act 15 USC § 1692g(a)(5))

56.     Plaintiff repeats and realleges paragraphs 1 through 33 as if fully stated herein.

57.     The FDCPA at 15 U.S.C. § 1692g(a)(5) provides:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
>
> *****
>
> (5)  a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

58.     CARRINGTON's March 29, 2019 communication did not contain the proper disclosures required by 15 U.S.C. § 1692g(a)(5), nor did CARRINGTON provide such disclosures within five days thereafter.

59. Specifically, the March 29, 2019 communication violated 15 U.S.C. § 1692g(a)(5) by failing to inform Plaintiff that CARRINGTON need only provide Plaintiff the name and address of the original creditor, if different from the current creditor, if Plaintiff notified CARRINGTON of Plaintiff request for that information in writing.

60. As a result, CARRINGTON violated 15 U.S.C. § 1692g(a)(5).

61. The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter failed to give Plaintiff statutorily-mandated disclosures to which Plaintiff was entitled.

62. CARRINGTON's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church*, 654 F. App'x at 995; *Macy*, 897 F.3d at 761.

## COUNT IV

### (Florida Consumer Collection Practices Act § 559.72(9), Fla. Stat)

63. Plaintiff repeats and realleges paragraphs 1 through 33 as if fully stated herein.

64. Section 559.72, Florida Statutes, of the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.

65. CARRINGTON is a "person" within the meaning of the FCCPA.

66. The mortgage loans encumbering the properties of Plaintiff and Class Members, and being serviced by CARRINGTON, are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

67. The FCCPA creates a private right of action. See § 559.77, Fla. Stat.

68. The Florida Legislature created shared, substantive statutory rights of Plaintiff and Class Members to be enforced and protected privately under the FCCPA, which CARRINGTON violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

69. Under Section 559.72, Florida Statutes,

> In collecting consumer debts, no person shall:
>
> ……
>
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

70. Based on the foregoing allegations, CARRINGTON violated Section 559.72(9), Florida Statutes, by attempting to collect "Pool Service" and "Other Unpaid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

71. Based on the foregoing allegations, CARRINGTON violated Section 559.72(9), Florida Statutes, by attempting to collect "Pool Service" and "Other Unpaid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them, when, as stated above, it knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

72. These violations of FCCPA caused injury to Plaintiff and Class Members by violating the foregoing substantive FCCPA rights.

73. As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

## COUNT V

### (Violation Florida Statute § 701.04)

74. Plaintiff repeats and realleges paragraphs 1 through 33 as if fully stated herein.

75. Section 701.04, Florida Statutes, provides for a statutory cause of action for the deliberate inflation of amounts properly due and secured by a mortgage.

76. Based on the foregoing allegations, CARRINGTON violated Section 701.04, Florida Statutes, by attempting to collect "Pool Service" and "Other Unpaid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts and in fact deliberately inflated.

77. These violations of Section 701.04 caused injury to Plaintiff and Class Members by violating the foregoing statutory rights.

78. As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 701.04, Florida Statutes.

## JURY DEMAND

79. Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, on behalf of itself and the Class, respectfully requests this Court to award against CARRINGTON in favor of Plaintiff and the Class all of the following:

a. Certifying Plaintiff's claims for class treatment under Federal Rules of Civil Procedure 23(a) and (b)(3), appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as counsel for the Class;

    b. A judgment for statutory damages under the FDCPA and/or the FCCPA and/or Fla. Stat. § 701.04;

    c. A judgment for costs and reasonable attorney's fees under the FDCPA and/or the FCCPA and/or Fla. Stat. § 701.04; and,

    d. Any other relief for Plaintiff and the Class the Court deems just and proper.

Dated: June 8, 2020.

By: *Scott D. Hirsch*
Scott David Hirsch
**SCOTT HIRSCH LAW GROUP**
Fla. Bar No. 50833
7301 W Palmetto Park Road
Suite 207A
Boca Raton, FL 33433
Tel: (561) 569-7062
Email: scott@scotthirschlawgroup.com

Erika Denise Rodriguez
**RODRIGUEZ LAW & ADVOCACY, P.A.**
7301 W Palmetto Park Road
Suite 207A
Boca Raton, FL 33433
Tel: (561) 800-4177
Email: Erika@rodriguezlawpa.com

Jessica L. Kerr
**THE ADVOCACY GROUP**
200 S.E. 6th Street, Suite 504
Fort Lauderdale, FL 33301
Tel: (954) 282-1858
Email: service@advocacypa.com

*Attorneys for Plaintiff*